UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                          :
JOSEPH OLUIGBO,
                                          :        11 Civ. 7309 (WHP)
                    Petitioner,
                                          :        MEMORANDUM & ORDER
          -against-
                                          :
UNITED STATES OF AMERICA,
                                          :
                    Respondent.
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

WILLIAM H. PAULEY III, District Judge:

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/23/12
```

          Petitioner pro se Joseph Oluigbo ("Oluigbo") seeks a writ of habeas corpus

pursuant to 28 U.S.C. § 2255 to vacate, correct, or set aside his 126-month sentence for drug-

related offenses.  For the following reasons, Oluigbo's motion is denied.

## BACKGROUND

          By superseding indictment filed June 12, 2007, the Government charged Oluigbo

and Emmanual Oruche ("Oruche") with  (1) conspiracy to distribute heroin or possess heroin

with intent to distribute, in violation of 21 U.S.C. § 846, and (2) conspiracy to import heroin into

the United States, in violation of 21 U.S.C. § 963.  (United States v. Oruche, 07 Cr. 124 (WHP),

ECF No. 20 ("Indictment").)  The Indictment alleged that Oruche was the leader of an

organization that imported heroin from Turkey and Nigeria into the United States in 2006.

(Indictment ¶ 9.)  It further alleged that Oluigbo was part of this organization and assisted drug

couriers.  (Indictment ¶ 10.)  Oluigbo used the facilities of Oruche's Bronx store—Nicobi

Healthcare—to conduct the narcotics business.  In June 2008, a jury in this district convicted

Oruche and Oluigbo of both conspiracies.

The Government's evidence concerning Oluigbo's knowledge and participation in the conspiracy was substantial. It included testimony from Rebecca Fomum-Tibah ("Fomum-Tibah"), a drug courier and Oruche's girlfriend. Fomum-Tibah made several trips to Turkey and smuggled heroin into the United States. (Trial Transcript ("Tr.") at 576:9-11.) She testified that Oluigbo was Oruche's "right-hand man," that "[t]hey shared both personal and business information," and that Oluigbo would "do a lot of the things that [Oruche] asked him to do." (Trial Transcript ("Tr.") at 582:13-23.) Fomum-Tibah also testified that Oluigbo made the travel arrangements for her first trip to Turkey to smuggle heroin into the United States, (Tr. at 583:14-584:15), that Oruche and Oluigbo picked her up at the airport when she returned from Turkey, (Tr. at 592:1-22, 606:1-608:2), and that Oluigbo was present when Oruche asked Fomum-Tibah if she was able to swallow heroin pellets. (Tr. at 607:16-608:2.) Fomum-Tibah also testified that Oluigbo confronted her after she sold some of Oruche's heroin without Oruche's permission, (Tr. at 614:6-615:3), and that Oluigbo wired her money to obtain a visa for her third trip to Istanbul. (Tr. at 620:20-22.)

Recordings of telephone calls between Oruche and Oluigbo further corroborated Oluigbo's knowing participation in the conspiracy. During one such call, Oruche told Oluigbo that the police were following him, and Oluigbo coached him on how to evade law enforcement. (Tr. 395:24-396:19.) In another call, Oruche told Oluigbo to meet a courier who would be carrying a bag "the way our people carry bags," and to make sure he was not followed. (GX 41T-6, GX 41T-13.)

At the close of the Government's case, Oluigbo moved for acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure, and this Court reserved judgment. (Tr. 939:19-22; 945:12-13.) Oluigbo renewed the motion at the close of his case, and the Court

2

denied it.  After the jury verdict, Oluigbo moved for acquittal and a new trial pursuant to Rule 33

of the Federal Rules of Criminal Procedure.  This Court denied the motions, holding, inter alia,

there was ample support for the conviction, as "[t]he evidence was not confined to a single event

and supported an inference that Oluigbo was an integral member of the conspiracy over several

months."  United States v. Oruche, 07 Cr. 0124 (WHP), 2009 WL 90193, at *2 (S.D.N.Y. Jan.

14, 2009).  On January 27, 2009, this Court sentenced Oluigbo, inter alia, to a term of 126

months of imprisonment.

Oluigbo appealed, arguing that (1) there was insufficient evidence to support his

conviction and (2) his sentence was in error.  Oruche also appealed.  The Court of Appeals

consolidated their appeals.  By summary order dated April 27, 2010, the Court of Appeals upheld

Oruche's and Oluigbo's convictions.  However, the Court of Appeals vacated Oruche's sentence

and remanded for resentencing because Oruche had been mischaracterized as a career offender

based on an error in a pre-sentence investigation report.  See United States v. Oluigbo, 375 F.

App'x 61, 65-66 (2d Cir. 2010).  The Court of Appeals likewise remanded Oluigbo for

resentencing so that this Court could consider whether Oluigbo was entitled to a different

sentence in view of Oruche's reduced offense level.  See Oluigbo, 375 F. App'x at 64-67.

On June 23, 2011, this Court again sentenced Oluigbo to 126 months of

imprisonment.  Oluigbo appealed, and by summary order dated June 27, 2012, the Court of

Appeals affirmed the sentence.[1]

---

[1] Accordingly, the Court need not address the Government's argument that it should not consider
the present petition while Oluigbo's appeal is pending.

3

DISCUSSION

Oluigbo argues that the Court must vacate, correct, or set aside his sentence because (1) he received ineffective assistance of counsel; (2) his conviction was supported by perjured testimony; and (3) the Government withheld Brady material.  As discussed below, Oluigbo's first claim is meritless, and his additional claims are procedurally barred.

I. Ineffective Assistance of Counsel

To prevail on an ineffective assistance of counsel claim, a petitioner must show (1) that his counsel's representation fell below an objective standard of reasonableness, and (2) that he was prejudiced by his counsel's deficient performance. Strickland v. Washington, 466 U.S. 668, 687 (1984); see also Matthews v. United States, 682 F.3d 180, 186 (2d Cir. 2012).  A "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Strickland, 466 U.S. at 689 (internal quotation marks omitted).  A decision not to pursue a particular avenue of investigation "must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland, 466 U.S. at 691.  Prejudice means "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

Oluigbo contends that his counsel's representation was not reasonable because his counsel failed to subpoena certain travel documents relevant to one of Fomum-Tibah's trips to Turkey.  Specifically, Olugibo wanted counsel to subpoena records from the airline, which

4

indicated when the ticket was booked.  Oluigbo maintains that he could not have obtained the tickets because they were purchased at a time when he was not at Oruche's store.  Second, Oluigbo insists that counsel should have subpoenaed the activity log from Fomum-Tibah's e-mail address, "becky@aaa.org."  Because the airline sent a confirmation to this address, Oluigbo believes that subpoenaing records from the address would demonstrate that Fomum-Tibah made the travel arrangements.

Oluigbo's arguments are without merit.  First, a Government exhibit admitted at trial contained the same information that Oluigbo sought from the airline records.  (See GX 47; see also (Tr. at 1046).)  Accordingly, it was reasonable for counsel not to obtain this duplicative information.  See United States v. Luciano, 158 F.3d 655, 660-61 (2d Cir. 1998) (counsel reasonably decided not to call a witness who "would have testified in a manner corroborative of another witness").  Additionally, an activity log of Fomum-Tibah's e-mail address would not identify the person who made the airline reservation.  Because the evidence would not have contradicted the evidence suggesting that Oluigbo made the travel reservations, counsel's decision not to subpoena it was reasonable.  See Ruiz v. U.S. Dep't of Homeland Sec., 07 Civ. 2615 (JG), 2008 WL 899353, at *10 (E.D.N.Y. April 1, 2008) (counsel's strategic decision not to subpoena unhelpful records was reasonable).

Moreover, counsel argued to the jury that there was no information in the travel records suggesting that Oluigbo was responsible for planning the trip, which is precisely the argument that Oluigbo hoped these records would support.  (Tr. at 1046 ("Spend your time on [the itinerary] which shows anything about Joseph Oluigbo touching that itinerary.  There is nothing.  It proves nothing about Joseph Oluigbo.").)  Thus, Oluigbo cannot show that counsel's failure to subpoena these records prejudiced him.  Strickland, 466 U.S. at 694.

II. Perjured Testimony and Brady Violation

        Oluigbo next contends that (1) his conviction is premised on perjured testimony, which violates his right to due process and (2) the Government committed Brady violations. The Government argues that these claims are procedurally barred because Oluigbo failed to raise them on direct appeal. "In general, a claim may not be presented in a habeas petition where the petitioner failed to properly raise the claim on direct review." Zhang v. United States, 506 F.3d 162, 166 (2d Cir. 2007) (internal quotation marks omitted). Where a petitioner fails to raise a claim on direct appeal, "the procedural default bar may be overcome only where the petitioner establishes either (1) cause for the failure to bring a direct appeal and actual prejudice from the alleged violations; or (2) actual innocence." Zhang, 506 F.3d at 166 (internal quotation marks omitted). "To satisfy the cause requirement the petitioner must show circumstances external to the petitioner, something that cannot be fairly attributed to him." Zhang, 506 F.3d at 166 (internal quotation marks omitted).

    A. Cause and Prejudice

        As for his due process claim, Oluigbo asserts that Fomum-Tibah perjured herself when she said that Oluigbo made travel arrangements for her trip to Turkey, picked her up from the airport, and wired her funds to obtain a visa. Assuming that Fomum-Tibah perjured herself, Oluigbo's claim is nonetheless barred because he cannot demonstrate cause for his failure to assert it on direct appeal. Oluigbo argues that the facts underlying this claim were not available to him at trial. For example, he contends that it was not until after his trial that he sought airline records to demonstrate that Fomum-Tibah lied about who made her travel arrangements. But this does not explain why Oluigbo could not have raised this issue on direct appeal. Indeed, Oluigbo does not claim that he learned anything new when he sought information from the

6

airline. Moreover, all of the alleged perjured testimony related to Oluigbo's actions. This suggests that upon hearing Fomum-Tibah's testimony at trial, Oluigbo would have known her statements were false, and therefore could have raised this issue on appeal. Cf. Reyes v. United States, 92 Civ. 7440 (RJW), 1993 WL 77330, at *2 (S.D.N.Y. Mar. 16, 1993) ("cause" demonstrated where petitioner did not learn that government witness lied about his taxes until three and a half years after petitioner appealed his conviction).

With respect to Oluigbo's claim that the Government committed Brady violations, Oluigbo asserts that the Government failed to turn over several recordings of telephone conversations that Fomum-Tibah had while she was in jail. Specifically, Oluigbo asserts that on August 11, 2006, Fomum-Tibah called Oruche and asked that he put money in her commissary account. Oruche subsequently asked Oluigbo to deposit the funds. On August 12, Fomum-Tibah called again to confirm that Oruche made the deposit. Oluigbo overheard Fomum-Tibah on a speakerphone asking Ourche if Oluigbo knew why she was in jail. Apparently, Oruche assured her that Oluigbo did not know why she was in prison. Later that same day, Fomum-Tibah called a third time and spoke with Oluigbo. Oluigbo asked why Fomum-Tibah was in jail, and she responded that she was being set up.

Assuming that such recordings exist, this claim is barred. Oluigbo asserts that he failed to raise this issue on direct appeal because the Government misled him when it represented that it had produced all recordings of telephone conversations Fomum-Tibah had while in prison. But, by Oluigbo's own admission, he asked counsel before trial to obtain these recordings, suggesting that he was aware that recordings were missing. Thus, Oluigbo does not demonstrate "circumstances external to [him]" that justify his failure to raise this issue previously. Zhang, 506 F.3d at 166.

7

Oluigbo also alleges that the Government failed to produce recordings of Fomum-Tibah's conversations that occurred from January 27 to February 27, 2007. But he does not explain what he believes these recordings contain, nor does he explain how he suffers "actual prejudice" from the Government's failure to disclose recordings during this period. Zhang, 506 F.3d at 166. Accordingly, Oluigbo's claim that the Government committed a Brady violation is also barred.

### B. Actual Innocence

Oluigbo does not explicitly claim that he is innocent. But courts must "liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions 'to raise the strongest arguments they suggest.'" Berlin v. United States, 478 F.3d 489, 491 (2d Cir. 2007) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)); see also Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam). Accordingly, this Court construes Oluigbo's repeated insistence that he never made travel arrangements for Fomum-Tibah to be an assertion of his actual innocence.

"To establish actual innocence, a petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." Sweet v. Bennett, 353 F.3d 135, 142 (2d Cir. 2003) (internal quotation marks omitted). Again, the Government presented ample evidence that Oluigbo participated in the drug conspiracy. Fomum-Tibah's testimony, along with various telephone recordings of Oluigbo's conversations with Oruche, demonstrates that Oluigbo is not actually innocent. Cf. Sweet, 353 F.3d at 142 (reasonable juror could have concluded that defendant acted recklessly when Government presented evidence that he repeatedly hit victim).

CONCLUSION

For the foregoing reasons, Joseph Oluigbo's motion to vacate, correct, or set aside his conviction is denied. Because Oluigbo has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. See 28 U.S.C. § 2253(c). In addition, this Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith. See Coppedge v. United States, 369 U.S. 438 (1962). The Clerk of the Court is directed to terminate the motion pending at ECF No. 1 and mark this case closed.

Dated:    August 23, 2012
          New York, New York

                         SO ORDERED:


                         WILLIAM H. PAULEY III
                         U.S.D.J.

9

*Copies mailed to:*

Joseph Oluigbo
59761-054
Moshannon Valley Correctional Center
555 Geo Drive
Phillipsburg, PA 16866
*Petitioner <u>pro se</u>*

Michael M. Rosensaft
United States Attorney Office
One Saint Andrew's Plaza
New York, NY 10007
*Counsel for Respondent*